**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

_____
                                                    )
VALERO ENERGY CORPORATION                           )
                                                    )
      Plaintiff,                                    )
                                                    )
v.                                                  )     Case No. 7:17-CV-00004-O
                                                    )
U.S. ENVIRONMENTAL PROTECTION                       )
AGENCY, *et al*.,                                   )
                                                    )
      Defendants.                                   )
_____)


**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

I.     BACKGROUND..........................................................................................................2

    A.   *Statutory and regulatory background* ..............................................................2

        1.   The Renewable Fuel Standard program.......................................2

        2.   Citizen suits under the CAA .......................................................3

    B.   Related regulatory and judicial proceedings.............................................4

    C.   Valero's Notice of Intent to Sue and Complaint......................................5

II.    STANDARD OF REVIEW .......................................................................................7

    A.   Motion to Dismiss for Improper Venue....................................................7

    B.   Motion to Dismiss for Lack of Subject Matter Jurisdiction ...................8

III.   ARGUMENT .............................................................................................................8

    A.   Valero fails to establish venue
        under 28 U.S.C. § 1391(e)(1)...................................................................9

        1.   Valero's asserted basis for venue fails because
           the events or omissions giving rise to Valero's claim
           did not occur in this District........................................................9

        2.   Valero cannot satisfy any of the other bases
           for venue in this Court ...............................................................11

    B.   This Court lacks jurisdiction over Valero's Complaint
        because Valero does not allege a nondiscretionary duty
        that EPA has failed to perform .................................................................13

        1.   CAA Section 304(a)(2) provides a limited sovereign
           immunity waiver authorizing suits to compel
           nondiscretionary agency action.................................................14

        2.   Count I of Valero's Complaint fails to identify
           any nondiscretionary duty that EPA must perform
           under CAA Section 211(o)(3)....................................................15

a.     EPA defined "obligated party" in the RFS
implementing regulations as required
by CAA Section 211(o)(2)(A) ...........................................................16

b.     The Act does not clearly require EPA to
re-evaluate the definition of obligated parties
by a date-certain deadline ................................................................17

3.     Count II of Valero's Complaint fails to identify
any nondiscretionary duty that EPA must perform under
CAA Section 211(o)(11). ..........................................................................20

C.     In the alternative, Count I of Valero's Complaint
must be dismissed because exclusive jurisdiction
over that claim lies in the courts of appeals .......................................................21

D.     At a minimum, the Court should stay this case pending
the outcome of the related D.C. Circuit proceedings ..........................................23

CONCLUSION.................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.,
   134 S. Ct. 568 (2013) .................................................................................................. 9

Barrow v. Sutton,
   No. H-14-200, 2014 WL 12586346 (S.D. Tex. July 16, 2014) ................................ 10

Braspetro Oil Servs. Co. v. Modec (USA), Inc.,
   240 F. App'x 612 (5th Cir. 2007) ............................................................................ 8

Brush Creek Trading Co. v. Zoes,
   No. SA-05-CA-1169-XR, 2006 WL 1169577 (W.D. Tex. Apr. 13, 2006) .............................. 11

Cal. Dump Truck Owners Ass'n v. Nichols,
   784 F.3d 500 (9th Cir. 2015) .................................................................................. 21

Chruby v. Global Tel Link Corp.,
   119 F. Supp. 3d 395 (E.D. Va. 2015) ..................................................................... 23

City of Seabrook v. Costle,
   659 F.2d 1371 (5th Cir. Unit A Oct. 1981) ............................................... 8, 14, 21, 22

Clinton v. Jones,
   520 U.S. 681 (1997) ................................................................................................ 23

Consol. Envtl. Mgmt. v. McCarthy,
   No. 16-1432, 2016 WL 6876647 (E.D. La. Nov. 22, 2016) .................................... 10

Davila v. United States,
   713 F.3d 248, 255 (5th Cir. 2013) .......................................................................... 8

Dow Chem. v. EPA,
   832 F.2d 319 (5th Cir. 1987) ............................................................................ 21, 23

Entergy Corp. v. Riverkeeper, Inc.,
   556 U.S. 208 (2009) ................................................................................................ 18

ENTU Auto Servs., Inc. v. PicMyRide.Biz, LLC,
   No. 15-77, 2015 WL 1638179 (E.D. La. Apr. 13, 2015) ............................... 7, 9, 11

Envtl. Def. Fund v. Thomas,
   870 F.2d 892 (2d Cir. 1989) ............................................................................ 14, 19

Falcoal, Inc. v. Turkiye Komur Isletmeleri Kurumu,
    660 F. Supp. 1536 (S.D. Tex. 1987) ................................................................ 10, 11

Gray Cas. & Sur. Co. v. Lebas,
    No. 12-2709, 2013 WL 74351 (E.D. La. Jan. 7, 2013) ........................................... 11

Greco v. Nat'l Football League,
    116 F. Supp. 3d 744 (N.D. Tex. 2015) .................................................................... 23

Hallstrom v. Tillamook Cty.,
    493 U.S. 20 (1989) ...................................................................................................... 6

Harvey v. Turnbo,
    35 F.3d 560, 1994 WL 499746 (5th Cir. Aug. 24, 1994) ........................................ 12

In re Supreme Beef Processors, Inc.,
    468 F.3d 248 (5th Cir. 2006) .................................................................................... 13

KCCR, Inc. v. Brunner,
    No. H-10-cv-012 , 2010 WL 4236868 (S.D. Tex. Oct. 21, 2010) ............................ 24

Kennecott Copper Corp. v. Costle,
    572 F.2d 1349 (9th Cir. 1978) ................................................................................. 14

Kokkonen v. Guardian Life Ins. Co.,
    511 U.S. 375 (1994) .................................................................................................... 8

Kopin v. Wells Fargo Bank, N.A.,
    No. 3-11-cv-1698-O, 2011 WL 13130489 (N.D. Tex. Nov. 14, 2011) ................... 7, 9

Lamont v. Haig,
    590 F.2d 1124 (D.C. Cir. 1978) ............................................................................... 12

Landis v. N. Am. Co.,
    299 U.S. 248 (1936) .................................................................................................. 23

Lane v. Pena,
    518 U.S. 187 (1996) .................................................................................................. 13

Lowery v. Estelle,
    533 F.2d 265 (5th Cir. 1976) .................................................................................... 13

Maine v. Thomas,
    874 F.2d 883 (1st Cir. 1989) ................................................................................... 14

Maldonado v. PTS Corp.,
    No. EP-06-CA-329-DB, 2007 WL 1745640 (W.D. Tex. Jan. 11, 2007) ................................. 13

Michigan v. EPA,
    135 S. Ct. 2699 (2015) ...................................................................................................... 17, 20

Monongahela Power Co. v. Reilly,
    980 F.2d 272 (4th Cir. 1992) ................................................................................................. 14

Mountain States Legal Found. v. Costle,
    630 F.2d 754 (10th Cir. 1980) ............................................................................................... 14

Nat. Res. Def. Council, Inc. v. Thomas,
    885 F.2d 1067 (2d Cir. 1989) ................................................................................................ 14

Norton v. S. Utah Wilderness All.,
    542 U.S. 55 (2004) .................................................................................................... 15, 17, 18

Olberding v. Ill. Cent. R.R. Co.,
    346 U.S. 338 (1953) .............................................................................................................. 9, 11

Oljato Chapter of the Navajo Tribe v. Train,
    515 F.2d 654 (D.C. Cir. 1975) ................................................................................................. 5

Paterson v. Weinberger,
    644 F.2d 521 (5th Cir. 1981) ................................................................................................... 8

Reuben H. Donnelley Corp. v. FTC,
    580 F.2d 264 (7th Cir. 1978) ................................................................................................. 12

Seariver Maritime Financial Holdings, Inc. v. Pena,
    952 F. Supp. 455 (S.D. Tex. 1996) .......................................................................................... 7

Sebelius v. Cloer,
    133 S. Ct. 1886 (2013) ........................................................................................................... 19

Sierra Club v. Browner,
    130 F. Supp. 2d 78 (D.D.C. 2001) .......................................................................................... 10

Sierra Club v. Thomas,
    828 F.2d 783 (D.C. Cir. 1987) ................................................... 14, 15, 17, 18, 19, 20

Silva v. Frankford Crossing Shopping Ctr.,
    No. 3:12-cv-2046-O-BH, 2013 WL 1264155 (N.D. Tex. Feb. 22, 2013) ................................. 7

<u>Texas v. EPA</u>,
    829 F.3d 405 (5th Cir. 2016) ............................................................................. 21

<u>United States v. Mitchell</u>,
    463 U.S. 206 (1983) ............................................................................................ 13

<u>Virginia v. United States</u>,
    74 F.3d 517 (4th Cir. 1996) .............................................................................. 21

<u>Woodson v. Surgitek, Inc.</u>,
    57 F.3d 1406 (5th Cir. 1995) ............................................................................. 23

<u>Zen-Noh Grain Corp. v. Jackson</u>,
    943 F. Supp. 2d 657 (E.D. La. 2013) ............................................................. 8, 14

## **RULES**

Fed. R. Civ. P. 12(b)(1)........................................................................................... 8, 24

Fed. R. Civ. P. 12(b)(3)........................................................................................ 7, 13, 24

## **STATUTES**

28 U.S.C. § 1391(b)(2) ............................................................................................ 11

28 U.S.C. § 1391(c)(2)............................................................................................. 12

28 U.S.C. § 1391(e) ............................................................................................ 9, 10

28 U.S.C. § 1391(e)(1)........................................................................................ 9, 11

28 U.S.C. § 1391(e)(1)(A) ..................................................................................... 12

28 U.S.C. § 1391(e)(1)(B) ............................................................................. 9, 10, 11

28 U.S.C. § 1391(f).................................................................................................. 11

28 U.S.C. § 1406(a) .................................................................. 1, 2, 7, 8, 9, 13, 17, 24

42 U.S.C. § 7409(d)(1) ............................................................................................ 18

42 U.S.C. § 7411(b)(1)(B) ...................................................................................... 18

42 U.S.C. § 7412(d)(6) ............................................................................................ 18

42 U.S.C. § 7545(o) ................................................................................................ 1, 2, 12

42 U.S.C. § 7545(o)(2)(A) ............................................................................................ 5, 16

42 U.S.C. § 7545(o)(2)(A)(i) ............................................................................................. 18

42 U.S.C. § 7545(o)(2)(A)(iii) ...................................................................................... 6, 16

42 U.S.C. § 7545(o)(2)(A)(iii)(I) ....................................................................................... 16

42 U.S.C. § 7545(o)(2)(B)(i) .............................................................................................. 2

42 U.S.C. § 7545(o)(3) ................................................................................................ 2, 15

42 U.S.C. § 7545(o)(3)(B)(i) ...................................................................................... 3, 16, 17

42 U.S.C. § 7545(o)(3)(B)(ii) ............................................................................................ 17

42 U.S.C. § 7545(o)(3)(B)(ii)(I) .......................................................................... 2, 3, 17, 18

42 U.S.C. § 7545(o)(3)(C) .................................................................................................. 3

42 U.S.C. § 7545(o)(5) ...................................................................................................... 19

42 U.S.C. § 7545(o)(5)(A)-(C) .......................................................................................... 19

42 U.S.C. § 7545(o)(7)(A) .................................................................................................. 3

42 U.S.C. § 7545(o)(7)(D) .................................................................................................. 3

42 U.S.C. § 7545(o)(7)(E)(ii) ............................................................................................. 3

42 U.S.C. § 7545(o)(11) ................................................................................... 3, 6, 19, 20

42 U.S.C. § 7601(a)(1) ...................................................................................................... 10

42 U.S.C. § 7604 ........................................................................................................... 1, 3

42 U.S.C. § 7604(a) .................................................................................... 4, 6, 10, 14

42 U.S.C. § 7604(a)(2) ........................................................................................ 4, 13, 14

42 U.S.C. § 7604(b)(2) ................................................................................................. 4, 6

42 U.S.C. § 7607(b)(1) ........................................................................................ 4, 5, 21, 22

42 U.S.C. § 7607(d)(1)(E) ................................................................................... 10

Pub. L. No. 109-58, 119 Stat. 594 (2005)........................................................... 2

Pub. L. No. 110-140, 121 Stat. 1492 (2007)....................................................... 2

## CODE OF FEDERAL REGULATIONS

40 C.F.R. Part 80, Subpart K ................................................................................ 5

40 C.F.R. § 80.1400 .............................................................................................. 5

40 C.F.R. § 80.1405(c).......................................................................................... 2

40 C.F.R. § 80.1406 .............................................................................................. 5

40 C.F.R. § 80.1406(a)(1)................................................................................. 2, 17

## FEDERAL REGISTER

72 Fed. Reg. 23,900 (May 1, 2007) ................................................................. 2, 16

75 Fed. Reg. 14,670 (Mar. 26, 2010)............................................................. 2, 4, 16

81 Fed. Reg. 83,776 (Nov. 10, 2016)............................................................... 5, 22

81 Fed. Reg. 95,551 (Dec. 28, 2016) .................................................................. 5

## INTRODUCTION

Plaintiff Valero Energy Corporation ("Valero") brings this citizen suit under Clean Air Act ("CAA" or "Act") Section 304, 42 U.S.C. § 7604, seeking to compel Defendants the United States Environmental Protection Agency and Scott Pruitt, Administrator (collectively "EPA"), to perform two actions over which the Act gives EPA significant discretion and for which there is no date-certain deadline. Despite the discretionary nature and timing of these actions, Valero claims these are "nondiscretionary duties" that the Court may compel EPA to perform. Specifically, in Count I of its Complaint, Valero contends that EPA has failed to perform a nondiscretionary duty to reconsider, on an annual basis, the implementing regulations of the Renewable Fuel Standard ("RFS") program, including the definition of "obligated party" under that program, 42 U.S.C. § 7545(o). Compl. ¶¶ 31-35. Valero alleges in Count II of the Complaint that EPA has also failed to perform a nondiscretionary duty to conduct "periodic reviews" of certain factors under the RFS program. Compl. ¶¶ 36-40.

As shown below, the Court should dismiss both claims. First, venue in this Court is improper, and the Court should dismiss the case, pursuant to 28 U.S.C. § 1406(a). Second, even if venue were proper in this Court, both claims should be dismissed because neither identifies a discrete, mandatory duty that EPA is obliged to perform by a "date-certain" deadline. In the alternative, Count I of the Complaint should be dismissed because CAA Section 307(b)(1), 42 U.S.C. § 7607(b)(1), vests exclusive jurisdiction over that count in the courts of appeals. Finally, even if this Court retains jurisdiction over the Complaint, it should stay this case pending resolution of a claim identical to that alleged in Count I that is now before the Court of Appeals for the District of Columbia Circuit.

I.      BACKGROUND

      A.      **Statutory and regulatory background.**

            1.      **The Renewable Fuel Standard program.**

In 2005, and again in 2007, Congress amended the CAA to establish a Renewable Fuel Standard program, now codified at 42 U.S.C. § 7545(o).  See Energy Policy Act of 2005 ("EPAct"), Pub. L. No. 109-58, 119 Stat. 594 (2005); Energy Independence and Security Act of 2007 ("EISA"), Pub. L. No. 110-140, 121 Stat. 1492 (2007).  The purpose of the RFS program is to "move the United States toward greater energy independence and security" and to "increase the production of clean renewable fuels."  121 Stat. 1492.  To accomplish this, Congress specified increasing "applicable volumes" of four categories of renewable fuel to be used in the transportation sector each year.  42 U.S.C. § 7545(o)(2)(B)(i).  The statute provides that the obligation to demonstrate that the applicable volumes have been met should fall on "refineries, blenders, and importers, as appropriate."  Id. § 7545(o)(3)(B)(ii)(I).  EPA identified the "appropriate" obligated parties in its 2007 regulations establishing the RFS program under the EPAct, 72 Fed. Reg. 23,900, 23,923-24 (May 1, 2007), and reaffirmed its approach in its 2010 regulations implementing the EISA amendments.  75 Fed. Reg. 14,670, 14,722 (Mar. 26, 2010). In a regulation codified at 40 C.F.R. § 80.1406(a)(1), EPA has designated refiners and importers of gasoline and diesel fuel as the obligated parties under the program.

      To meet the applicable volumes for a given year, refiners and importers must demonstrate that a volume of renewable fuel has been introduced into commerce in the United States that is proportional to their import or production of nonrenewable fuel.  40 C.F.R. § 80.1405(c); 42 U.S.C. § 7545(o)(3).  EPA determines the required proportion by setting annual percentage standards.  42 U.S.C. § 7545(o)(3).  The percentage standard is the ratio of the applicable volume

of renewable fuel for the particular year to the total amount of projected domestic nonrenewable gasoline and diesel fuel use.  See id.  The Act also gives EPA authority to adjust the Act's applicable volumes as part of its process for setting the annual percentage standards.  42 U.S.C. § 7545(o)(3)(C), (7)(A), (7)(D), (7)(E)(ii).  The percentage standards for a given year are to be set by November 30 of the preceding year.  Id. § 7545(o)(3)(B)(i).

Valero's claims involve two specific aspects of the RFS program.  First, CAA Section 211(o)(3)(B)(ii)(I) states that the annual percentage standards shall "be applicable to refineries, blenders, and importers, *as appropriate*."  42 U.S.C. § 7545(o)(3)(B)(ii)(I) (emphasis added).  Valero alleges that EPA has failed to satisfy a nondiscretionary duty to annually reconsider the definition of the "appropriate" obligated parties that must comply with the annual percentage standards, also referred to as the "point of obligation."  See Compl. ¶¶ 18-19, 31-35.  Second, as is pertinent here, CAA Section 211(o)(11), 42 U.S.C. § 7545(o)(11), directs EPA to conduct "periodic reviews" of three factors: "existing technologies;" "the feasibility of achieving compliance with" the applicable volumes; and the "impacts" of the applicable volumes on certain individuals and entities.  The Act does not provide a timeline by which the periodic reviews should occur.  Valero alleges that EPA has failed to satisfy its duty to conduct these periodic reviews.  See Compl. ¶¶ 36-40.

## 2.    Citizen suits under the CAA.

Section 304, 42 U.S.C. § 7604, is the CAA's citizen suit provision, which provides:

[A]ny person may commence a civil action on his own behalf –

\* \* \*

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator[.]

Id. § 7604(a)(2).  The citizen suit provision further states:  "The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, . . . to order the Administrator to perform such act or duty[.]"  Id. § 7604(a).  Before commencing an action for a failure to perform a nondiscretionary duty, the statute requires that a plaintiff provide the Agency with 60 days' notice of its intent to sue.  Id.  § 7604(b)(2).  Once EPA takes a final action, however, the district courts are divested of jurisdiction, and a petition for judicial review of such action "may be filed only" in the courts of appeals.  See id. § 7607(b)(1).

### B.      Related regulatory and judicial proceedings.

Several judicial and regulatory proceedings related to this matter are pending before the D.C. Circuit and before EPA.  On February 12, 2016, Valero filed, in the D.C. Circuit, a petition for review of EPA's 2014-2016 Renewable Fuel Standard final rule, which, *inter alia*, set the annual percentage standards for 2014, 2015, and 2016.  Mot. Ex. A, App. at 1.  In that litigation, Valero challenges EPA's allegedly improper failure to reconsider, in the final rule, the definition of "obligated parties" under the RFS program — raising the same argument as it does in Count I of this action.  Mot. Ex. B, App. at 22.  Oral argument in that case is scheduled on April 24, 2017.  Mot. Ex. C, App. at 59.

In addition, on February 12, 2016, Valero filed a petition for review in the D.C. Circuit, seeking review of several older RFS final rules, including a 2010 rule entitled "Regulation of Fuels and Fuel Additives:  Changes to Renewable Fuel Standard Program," published in the Federal Register at 75 Fed. Reg. 14,670 (Mar. 26, 2010).  Mot. Ex. D, App. at 60-61.  This 2010 rule promulgated the regulatory provision that imposes RFS compliance obligations on refiners

and importers of gasoline or diesel fuel, including Valero.[1]  See 40 C.F.R. § 80.1406; 42 U.S.C. § 7607(b)(1).

On February 12, 2016, Valero also submitted an administrative petition to EPA in relation to this second judicial petition for review, asking the Agency to change the definition of "obligated party."  Mot. Ex. D, App. at 67.  The second judicial petition for review is currently being held in abeyance pending EPA's consideration of this administrative petition, pursuant to D.C. Circuit precedent.  Oljato Chapter of the Navajo Tribe v. Train, 515 F.2d 654, 666 (D.C. Cir. 1975).  In addition, on June 13, 2016, Valero separately petitioned EPA to change the point of obligation regulation, stating, in part, that the Act compels EPA to do so.  Compl. Ex. A.  On November 10, 2016, EPA proposed to deny both of Valero's administrative petitions, as well as similar administrative petitions from other parties.  81 Fed. Reg. 83,776.  The public comment period on the proposed denial closed February 22, 2017, see 81 Fed. Reg. 95,551 (Dec. 28, 2016), approximately one month after the Complaint was filed in this case.  The Agency is currently evaluating the comments received.

### C.   Valero's Notice of Intent to Sue and Complaint.

On November 3, 2016, Valero submitted to the Agency its notice of intent to sue under the CAA citizen suit provision for EPA's alleged failure to perform two nondiscretionary duties required by statute.  Compl. Ex. C.  In its notice, Valero asserted, as relevant here, that EPA is required but has failed to:  (1) "regulate entities, as appropriate" under the RFS program, citing 42 U.S.C. § 7545(o)(2)(A), (o)(3)(B), and (2) conduct periodic reviews of certain factors under

---

[1] The other final rules challenged in Valero's petition for review promulgated regulatory provisions codified at 40 C.F.R. Part 80, Subpart K, which have generally been superseded by more recent regulations.  See 40 C.F.R. § 80.1400.

the RFS program, citing 42 U.S.C. § 7545(o)(11).  Compl. Ex. C at 1-2, 5-8.  The mandatory

sixty-day notice period applicable to nondiscretionary duty claims under the CAA citizen suit

provision expired on January 2, 2017.  See 42 U.S.C. § 7604(b)(2).[2]

On January 18, 2017, Valero filed its Complaint in this Court.  The Complaint states that

Valero is regulated as an obligated party under the RFS program, and maintains assets that are

impacted by the RFS program in the Witchita Falls Division, but has its principal place of

business in San Antonio, Texas.  Compl. ¶¶ 4, 6-7.  Count I of the Complaint alleges that EPA is

required, but has failed to "evaluate and adjust annually the regulations implementing the RFS

program (including the definition of 'obligated party') to ensure that they are 'appropriate' . . . ."

Compl. ¶ 32 (citing 42 U.S.C. § 7545(o)(2)(A)(iii) and (o)(3)(B)(ii)).  Count II of the Complaint

alleges that EPA has failed to complete the periodic review described in CAA Section

211(o)(11), 42 U.S.C. § 7545(o)(11).  Compl. ¶¶ 36-40.  Valero seeks declaratory relief and an

order requiring EPA to "conduct a rulemaking by a date certain" to satisfy these alleged

nondiscretionary duties.  Id. at Relief Requested.  Valero also asks the Court to order that EPA

"take other appropriate actions to remedy, mitigate, and offset the harm to" Valero.  Id.

---

[2] Valero also states in its notice to the Agency that it was providing "notice of intent to file suit for agency action unreasonable delayed" pursuant to CAA Section 304(a), 42 U.S.C. § 7604(a). Compl. Ex. C at 1.  An action for unreasonable delay requires a mandatory 180 days' notice of an intent to sue—which in this case does not expire until May 6, 2017.  See id.; Hallstrom v. Tillamook Cty., 493 U.S. 20, 23, 25 (1989) (holding that a notice provision in an analogous environmental statute "modeled upon § 304" of the Clean Air Act established a mandatory, not optional, condition precedent to suit).  Valero does not base its claims on unreasonable agency delay, nor could it—Valero filed its Complaint before the mandatory 180-day notice period for unreasonable delay claims expired, and its claim, even if timely, would only be proper in the District Court for the District of Columbia.  See 42 U.S.C. § 7604(a).

## II.      STANDARD OF REVIEW

### A.      Motion to Dismiss for Improper Venue.

Fed. R. Civ. P. 12(b)(3) allows a party to bring a motion to dismiss on the basis of improper venue.  Although the Fifth Circuit has not ruled on the issue of which party bears the burden on a Rule 12(b)(3) motion, "most district courts within the [Fifth] [C]ircuit have imposed the burden of proving that venue is proper on the plaintiff once a defendant has objected to the plaintiff's chosen forum." Silva v. Frankford Crossing Shopping Ctr., No. 3:12-cv-2046-O-BH, 2013 WL 1264155, at *3 (N.D. Tex. Feb. 22, 2013) (citing cases); see also Kopin v. Wells Fargo Bank, N.A., No. 3-11-cv-1698-O, 2011 WL 13130489, at *2 (N.D. Tex. Nov. 14, 2011) (Reed O'Connor, J.) (noting split authority on burden of proof).  The burden is properly placed on the plaintiff because "to hold otherwise would circumvent the purpose of the venue statutes—it would give plaintiffs an improper incentive to attempt to initiate actions in a forum favorable to them but improper as to venue." Seariver Maritime Financial Holdings, Inc. v. Pena, 952 F. Supp. 455, 458 (S.D. Tex. 1996) (internal quotation marks and citation omitted); see also ENTU Auto Servs., Inc. v. PicMyRide.Biz, LLC, No. 15-77, 2015 WL 1638179, at *3 (E.D. La. Apr. 13, 2015) ("Because the plaintiff must institute his action in a permissible forum in terms of jurisdiction and venue, the plaintiff must demonstrate that venue is proper.").[3]  If the plaintiff does not meet its burden, the Court must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all

---

[3] As shown in Part III.A, infra, Valero fails to allege any facts sufficient to demonstrate venue is proper in this Court.  Therefore, regardless of where the burden rests, venue is improper here. See Kopin, 2011 WL 13130489, at *2.

allegations in the complaint and resolve all factual conflicts in favor of the plaintiff. Braspetro Oil Servs. Co. v. Modec (USA), Inc., 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam).

**B.      Motion to Dismiss for Lack of Subject Matter Jurisdiction.**

The Fifth Circuit applies Fed. R. Civ. P. 12(b)(1) to motions to dismiss based on a lack of a nondiscretionary duty under the CAA citizen suit provision. See City of Seabrook v. Costle, 659 F.2d 1371, 1374 (5th Cir. Unit A Oct. 1981); Zen-Noh Grain Corp. v. Jackson, 943 F. Supp. 2d 657, 658 (E.D. La. 2013).  When challenging subject-matter jurisdiction under Rule 12(b)(1), a party can make a "facial attack" or a "factual attack." Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981).  If the party files a Rule 12(b)(1) motion without submitting evidence such as affidavits or testimony, it is considered a "facial attack," and the court looks only at the sufficiency of the allegations in the pleadings and assumes them to be true. Id.; Davila v. United States, 713 F.3d 248, 255 (5th Cir. 2013).  Valero bears the burden of showing subject matter jurisdiction.  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).

**III.   ARGUMENT**

The entirety of Valero's Complaint should be dismissed.  Valero fails to demonstrate that venue is proper in this Court, and this case should be dismissed pursuant to 28 U.S.C. § 1406(a). Even if venue were proper, Valero's claims should be dismissed for lack of subject matter jurisdiction under the CAA citizen suit provision; that provision does not provide the required waiver of the United States' sovereign immunity for either claim.  Moreover, the CAA vests jurisdiction over Count I of the Complaint exclusively in the D.C. Circuit, and for this additional reason, that count should be dismissed.  Alternatively, the Court should stay this case pending resolution of Valero's claim before the D.C. Circuit that is identical to Count I of its Complaint here.

**A.      Valero fails to establish venue under 28 U.S.C. § 1391(e)(1).**

28 U.S.C. § 1406(a) provides that a district court "shall dismiss, or if it be in the interest

of justice transfer" an improperly-venued case.  The substantive question of whether venue is

proper in this case is governed by 28 U.S.C. § 1391(e).  See Atlantic Marine Constr. Co., Inc. v.

U.S. Dist. Court for W. Dist. of Tex., 134 S. Ct. 568, 577 (2013); Compl. ¶ 4 (citing 28 U.S.C.

1391(e)).  In order for venue to be proper under that provision, a plaintiff must bring suit

> in any judicial district in which (A) a defendant in the action resides, (B) a
> substantial part of the events or omissions giving rise to the claim occurred, or a
> substantial part of property that is the subject of the action is situated, or (C) the
> plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1).  "The requirement of venue is specific and unambiguous; it is not one of

those vague principles which, in the interest of some overriding policy, is to be given a 'liberal'

construction."  Olberding v. Ill. Cent. R.R. Co., 346 U.S. 338, 340 (1953).  As discussed below,

none of the three bases for venue listed in 28 U.S.C. § 1391(e)(1) exists in this case, and Valero's

Complaint should be dismissed pursuant to 28 U.S.C. § 1406(a).

**1.      Valero's asserted basis for venue fails because the events or omissions
giving rise to Valero's claim did not occur in this District.**

In its Complaint, Compl. ¶¶ 4-5, Valero alleges that venue is proper under 28 U.S.C.

§ 1391(e)(1)(B) because "a substantial part of the events or omissions giving rise to the claim

occurred" in this District.  This basis for venue is sometimes referred to as "transactional venue."

See, e.g., ENTU, 2015 WL 1638179, at *4.  Courts "strictly construe" the transactional venue

test, finding it satisfied only if "*significant* events or omissions *material* to the plaintiff's claim . .

. occurred in the district in question."  Kopin, 2011 WL 13130489, at *3 (Reed O'Connor, J.)

(construing analogous provision at 28 U.S.C. § 1391(a)(2) and citing cases).

Here, Valero's claims are premised on EPA's alleged failure to act under the Clean Air Act's RFS program.  Compl. ¶¶ 31-40.  Under the Act, "the promulgation or revision of any regulation pertaining to any fuel or fuel additive" under the RFS program must be signed by EPA's Administrator pursuant to CAA Section 301(a)(1), 42 U.S.C. § 7601(a)(1).  Id. § 7607(d)(1)(E).  In addition, the authority to issue a periodic review under CAA Section 211(o)(11), 42 U.S.C. § 7545(o)(11), has also not been delegated EPA's regional offices.  EPA's challenged decisions not to act are thus made in Washington, D.C.  The "events or omissions" giving rise to Valero's claims therefore occurred in the District of Columbia, not in the Northern District of Texas.[4]

Venue is not proper in this District merely because Valero owns regulated assets or markets and sells fuel subject to the RFS program in this District.  Compl. ¶¶ 4-5.  None of Valero's assets could be properly characterized as "property" that is "the subject of [this] action" under the venue statute, and Valero accordingly does not premise venue on the "property" clause of 28 U.S.C. § 1391(e)(1)(B).  That clause provides venue over "property disputes or in rem actions," neither of which applies here.  Falcoal, Inc. v. Turkiye Komur Isletmeleri Kurumu, 660 F. Supp. 1536, 1543 (S.D. Tex. 1987); see also, e.g., Barrow v. Sutton, No. H-14-200, 2014 WL

---

[4] Valero also premises venue on "EPA's failure to . . . take required action under the statute and failure to regulate rack sellers appropriately" in this District.  Compl. ¶ 5.  To the extent Valero is arguing that an alleged failure to regulate third parties "appropriately" provides a basis for venue under 28 U.S.C. § 1391(e), its argument is groundless.  Under the CAA citizen suit provision, Valero may only challenge EPA's failure to take an action required by the statute, and any remedy is limited to an order compelling EPA to act.  42 U.S.C. § 7604(a) ("The district courts shall have jurisdiction . . . to order the Administrator to perform such act or duty . . .").  Even if Valero prevails in this action, the Court may not direct the *substance* of EPA's action, such as directing EPA to regulate rack sellers.  See, e.g., Consol. Envtl. Mgmt. v. McCarthy, No. 16-1432, 2016 WL 6876647, at *12 (E.D. La. Nov. 22, 2016) (citing Sierra Club v. Browner, 130 F. Supp. 2d 78, 89 (D.D.C. 2001)).  Therefore, this additional alleged basis for venue—that EPA has failed to regulate additional third parties in this District differently—is improper.

-10-

12586346, at *3 (S.D. Tex. July 16, 2014) (holding that property clause applies to suit based on "specifically identifiable, tangible personal property which was the subject of the agreements and business dealings").  By contrast, the mere ownership of corporate assets is not enough to satisfy the "property" clause.  See Falcoal, 660 F. Supp. at 1543 (discussing a venue statute with identical language, 28 U.S.C. § 1391(f), and finding that such an interpretation would improperly "make venue proper in the district in which a corporation's assets lie any time a corporation sues claiming it has been financially damaged").  Otherwise, a large corporation with assets located throughout the country could sue the United States in any district it chose, effectively nullifying the "specific and unambiguous" venue provisions detailed by Congress.  Olberding, 346 U.S. at 340.

Valero's claim that it experiences the "economic impact of EPA's regulations" in this District is also not sufficient to establish venue here.  Compl. ¶¶ 4-5.  District courts in the Fifth Circuit have held the opposite:  the location of the "economic effects" on a plaintiff is insufficient to establish venue under the "transactional venue" test.  See ENTU, 2015 WL 1638179, at *4 (interpreting 28 U.S.C. § 1391(b)(2), which contains the same language as 28 U.S.C. § 1391(e)(1)(B)); Gray Cas. & Sur. Co. v. Lebas, No. 12-2709, 2013 WL 74351, at *2 (E.D. La. Jan. 7, 2013) (same); Brush Creek Trading Co. v. Zoes, No. SA-05-CA-1169-XR, 2006 WL 1169577, at *2 (W.D. Tex. Apr. 13, 2006) (same, finding "[t]he venue determination focuses on the relevant activities of the Defendant, not of the Plaintiff").  Therefore, Valero has failed to allege a sufficient basis for venue under 28 U.S.C. § 1391(e)(1)(B).

### 2. Valero cannot satisfy any of the other bases for venue in this Court.

Venue is also not proper in this District under the two additional bases for venue under 28 U.S.C. § 1391(e)(1).  First, venue in this District is not proper based on the residence of the

Defendants.  When considering whether a federal defendant resides in a particular district pursuant to 28 U.S.C. § 1391(e)(1)(A), "[w]hat controls is the official residence of the federal defendant where the official duties are performed."  Lamont v. Haig, 590 F.2d 1124, 1128 n.19 (D.C. Cir. 1978).  Furthermore, where a federal agency or an official thereof is a defendant, it is well-established that venue does not lie in every judicial district where the agency maintains a regional office.  See Reuben H. Donnelley Corp. v. FTC, 580 F.2d 264, 267 (7th Cir. 1978). Unless a plaintiff alleges that a regional office is liable, venue does not lie in the district of the regional office.  See Harvey v. Turnbo, 35 F.3d 560, 1994 WL 499746, at *2-4 (5th Cir. Aug. 24, 1994) (unpublished) (per curiam).

Valero has alleged that EPA has failed to promulgate regulations and conduct periodic reviews under the Clean Air Act's RFS program, 42 U.S.C. § 7545(o), actions which could only occur at EPA headquarters.  Compl. ¶¶ 31-40.  EPA's official residence for the purposes of this case is therefore Washington, D.C., and venue under 28 U.S.C. § 1391(e)(1)(A) is only proper in the United States District Court for the District of Columbia.

Second, Valero does not rely on its residence for venue, nor could it.  Valero states that it is a Delaware corporation with its principal place of business in San Antonio, Texas.  Compl. ¶ 6.  Pursuant to 28 U.S.C. § 1391(c)(2), "[f]or all venue purposes" an entity is deemed to reside, if a plaintiff, "in the judicial district in which it maintains its principal place of business."  Valero therefore resides in the Western District of Texas, not in this District, and the third and final basis for venue is not present in this case.

For all of the reasons discussed above, Valero has failed to demonstrate that venue is proper in this District.  Accordingly, the Court should dismiss Valero's Complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a).[5]

**B.      This Court lacks jurisdiction over Valero's Complaint because Valero does not allege a nondiscretionary duty that EPA has failed to perform.**

Absent a waiver of sovereign immunity, the courts lack jurisdiction to entertain a suit against the United States.  United States v. Mitchell, 463 U.S. 206, 212 (1983).  A waiver must be unequivocally expressed in the statutory text, and its scope will be strictly construed in favor of the sovereign.  Lane v. Pena, 518 U.S. 187, 192 (1996); In re Supreme Beef Processors, Inc., 468 F.3d 248, 253 (5th Cir. 2006).   Valero bases its suit on the CAA citizen suit provision, which provides a limited waiver of sovereign immunity "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."  42 U.S.C. § 7604(a)(2).  Because Valero fails to demonstrate that its claims fall within the narrow scope of Section 304(a)(2), even if venue were proper in this District, its Complaint must be dismissed for lack of jurisdiction.

---

[5] Under 28 U.S.C. § 1406(a), "if it be in the interest of justice," instead of dismissing an improperly-venued case the Court may transfer it "to any district . . . in which it could have been brought."  The "interest of justice" does not appear to warrant transfer here, as there is no apparent prejudice to Valero, such as application of the statute of limitations to bar re-filing, that would occur if the Complaint were dismissed without prejudice.  See Lowery v. Estelle, 533 F.2d 265, 267 (5th Cir. 1976) (dismissal for improper venue appropriate because justice did not require transfer in the absence of statute of limitations bar to refiling); Maldonado v. PTS Corp., No. EP-06-CA-329-DB, 2007 WL 1745640, at *2 (W.D. Tex. Jan. 11, 2007) ("The Plaintiff bears the burden to proffer a justification, in the interest of justice which warrants transfer rather than dismissal without prejudice.").

### 1.    CAA Section 304(a)(2) provides a limited sovereign immunity waiver authorizing suits to compel nondiscretionary agency action.

CAA Section 304(a) waives federal sovereign immunity for two limited types of actions against EPA: (1) suits to compel EPA to perform a nondiscretionary duty under Section 304(a)(2), 42 U.S.C. § 7604(a)(2), and (2) suits to compel agency action unreasonably delayed under Section 304(a), 42 U.S.C. § 7604(a).  In this case, Valero brings only the first type of action—EPA's failure to perform a nondiscretionary duty under Section 304(a)(2) of the Act. Compl. ¶ 3.

Section 304(a)(2) has routinely been interpreted narrowly to authorize suit only where the Act "categorically mandat[es]" that EPA perform a "clear-cut nondiscretionary duty" by a "date-certain deadline." Sierra Club v. Thomas, 828 F.2d 783, 791 (D.C. Cir. 1987); Seabrook, 659 F.2d at 1374; Monongahela Power Co. v. Reilly, 980 F.2d 272, 276 n.3 (4th Cir. 1992); Nat. Res. Def. Council, Inc. v. Thomas, 885 F.2d 1067, 1073 (2d Cir. 1989); Maine v. Thomas, 874 F.2d 883, 888 (1st Cir. 1989); Mountain States Legal Found. v. Costle, 630 F.2d 754, 766 (10th Cir. 1980); Kennecott Copper Corp. v. Costle, 572 F.2d 1349, 1353 (9th Cir. 1978); Zen-Noh Grain Corp., 943 F. Supp. 2d at 662.  A "date certain deadline" is necessary to distinguish a nondiscretionary duty claim from a claim for "unreasonable delay":  Where no deadline is mandated, an agency retains discretion with respect to the timing of its action, and a claim of agency delay must be challenged in an unreasonable delay suit, not a nondiscretionary duty suit. See Zen-Noh, 943 F. Supp. at 662; Nat. Res. Def. Council, 885 F.2d at 1075; Maine, 874 F.2d at 888.  Nor can the duty at issue be one committed to agency discretion.  Envtl. Def. Fund v. Thomas, 870 F.2d 892, 899 (2d Cir. 1989) ("[T]he district court has jurisdiction, under Section 304, to compel the Administrator to perform purely ministerial acts, not to order the Administrator to make particular judgmental decisions."); Costle, 630 F.2d at 766 ("Congress . . .

restricted citizens' suits to actions seeking to enforce specific non-discretionary clear-cut requirements of the Clean Air Act.").

These requirements are rooted in the basic principle that a court is not "empowered to enter general orders compelling compliance with broad statutory mandates," and is instead limited to compelling "discrete" actions that an agency "is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 66 (2004). The Court's role is limited to "mak[ing] a clear-cut factual determination" of whether the Agency did or did not comply with a discrete statutory duty. Sierra Club v. Thomas, 828 F.2d at 791 (internal quotation marks and citation omitted). This limitation is necessary to "protect agencies from undue judicial interference with their lawful discretion, and . . . avoid judicial entanglement in abstract policy disagreements . . . ." Norton, 542 U.S. at 66. As discussed below, the statutory provisions relied on by Valero do not impose any nondiscretionary duties on EPA, and the Court should dismiss the Complaint for lack of jurisdiction.

> **2.     Count I of Valero's Complaint fails to identify any nondiscretionary duty that EPA must perform under CAA Section 211(o)(3).**

As discussed in more detail, supra Part I.A.1, the Congressionally-mandated RFS program requires EPA to establish annual percentage standards to ensure that certain volumes of renewable fuels are used in the United States transportation sector each year. 42 U.S.C. § 7545(o)(3). Parties required to comply with these standards are referred to as "obligated parties." In Count I of its Complaint, Valero alleges that EPA has "failed to evaluate and adjust annually the regulations implementing the RFS program (including the definition of 'obligated party') to ensure that they are 'appropriate' as required under section 211(o)(2)(A), (o)(3)(B)" of the CAA. Compl. ¶ 31.

While this count is framed somewhat broadly as applying to all of EPA's "implementing regulations," the term "appropriate," quoted in in Count I, applies only to EPA's identification of "appropriate" obligated parties.  See 42 U.S.C. § 7545(o)(2)(A)(iii), (o)(3)(B)(ii); Compl. ¶ 16. Moreover, the only "annual" EPA action referenced in Count I occurs under 42 U.S.C. § 7545(o)(3)(B)(i), which (as discussed in greater detail below) requires EPA to promulgate the obligations that will apply to those parties by November 30 of the preceding year.  This provision does not, however, impose a discrete duty on EPA to re-evaluate the definition of "obligated party," established in the RFS implementing regulations, by any date-certain deadline. Valero's claim based on the alleged existence of such a duty must therefore be dismissed for lack of subject matter jurisdiction.

### a.  EPA defined "obligated party" in the RFS implementing regulations as required by CAA Section 211(o)(2)(A).

EPA's duty to issue regulations implementing the RFS program arises from CAA Section 211(o)(2)(A), 42 U.S.C. § 7545(o)(2)(A).  This section directs EPA to issue regulations implementing (1) the amendments to the CAA (as part of EPAct) which established the RFS, and (2) the 2007 amendments to the CAA (as part of EISA) which revised the RFS program to its current form.  Id.  The Act also contains specific deadlines by which EPA must do so.  Id.

As is relevant to this case, Section 211(o)(2)(A) instructs that EPA's implementing regulations contain compliance provisions "applicable to refineries, blenders, distributors, and importers, as appropriate . . . ."  42 U.S.C. § 7545(o)(2)(A)(iii)(I).  EPA satisfied this duty by issuing RFS regulations in 2007, in which it defined "obligated parties" as refiners and importers of gasoline in the United States.  72 Fed. Reg. at 23,924.  As part of its implementation of the EISA amendments, EPA issued regulations defining "obligated parties" again in 2010, at which time it considered and took comment on alternate approaches to this definition.  75 Fed. Reg. at

-16-

14,721-22; 40 C.F.R. § 80.1406(a)(1).  As is relevant here, the final 2010 regulations maintained the designation of refiners and importers as the obligated parties who must demonstrate compliance with the annual standards.  Id.

> **b.**   **The Act does not clearly require EPA to re-evaluate the definition of obligated parties by a date-certain deadline.**

Against the backdrop of this and other implementing regulations, EPA is required to promulgate by November 30 of each year the renewable fuel obligations applicable to the following year, pursuant to CAA Section 211(o)(3)(B)(i), 42 U.S.C. § 7545(o)(3)(B)(i).  This section of the Act also directs that these annual standards shall "be applicable to refineries, blenders, and importers, as appropriate."  Id. § 7545(o)(3)(B)(ii)(I).  Valero's Count I alleges that this statutory language compels EPA to re-evaluate the definition of obligated parties every year.  See Compl. ¶ 31.  This argument founders, however, on the plain language of the statute.

First, Section 211(o)(3)(B)(ii)(I), 42 U.S.C. § 7545(o)(3)(B)(ii)(I), does not create a "nondiscretionary" duty to re-evaluate the definition of obligated parties at all.  Sierra Club, 828 F.2d at 791; Norton, 542 U.S. at 64.  To the contrary, the Act's text provides that the annual percentage standards "be applicable to refineries, blenders, and importers, *as appropriate*."  42 U.S.C. § 7545(o)(3)(B)(ii)(I) (emphasis added).  The term "appropriate" is "the classic broad and all-encompassing term" that confers a significant delegation of authority by Congress.  See, e.g., Michigan v. EPA, 135 S. Ct. 2699, 2707 (2015) (internal quotation marks and citation omitted).  Moreover, the Act does not list statutory factors that EPA must consider in selecting from among the list of potentially obligated parties specified in the statute, 42 U.S.C. § 7545(o)(3)(B)(i)-(ii), and this statutory silence further indicates that Congress intended to confer broad discretion on

EPA. <u>See, e.g.</u>, <u>Entergy Corp. v. Riverkeeper, Inc</u>. 556 U.S. 208, 222-23 (2009).[6]  Given this

broad grant of discretion under Section 211(o)(3)(B)(ii)(I), Valero's Count I fails to allege

"discrete" action required under the CAA citizen suit provision.

Second, unlike the renewable fuel obligation which must be promulgated every year by

November 30, and unlike the Act's implementing regulations, which were to be promulgated by

specific statutory deadlines, nothing in the Act's text "categorically mandates" any designation

or re-designation of "appropriate" obligated parties that EPA must undertake annually, or by any

date-certain deadline at all.  <u>Compare</u> 42 U.S.C. § 7545(o)(2)(A)(i), (o)(3)(B)(i) <u>with</u> <u>id.</u>

§ 7545(o)(3)(B)(ii)(I); <u>see</u> <u>Sierra Club</u>, 828 F.2d at 791.  Congress has clearly demonstrated in

other sections of the Clean Air Act that it understands how to set a deadline for EPA to review

and, as appropriate, revise its regulations.  <u>See, e.g.</u>, 42 U.S.C. § 7409(d)(1) (requiring review

and, if appropriate, revision of air quality criteria and national ambient air quality standards

every 5 years); § 7411(b)(1)(B) (requiring review and, if appropriate revision, of standards of

performance every 8 years); § 7412(d)(6) (requiring review and, if appropriate, revision of

national emissions standards for hazardous air pollutants every 8 years).  By contrast, *nothing* in

the text of Section 211(o)(3)(B)(ii)(I) requires EPA to review or revise its regulations defining

---

[6] Indeed, even a statute that requires the Agency to consider specified factors does not impose an enforceable obligation where the agency retains discretion regarding how to consider those factors.  <u>See, e.g.</u>, <u>Norton</u>, 542 U.S. at 65 (finding a statutory requirement to "continue to manage [wilderness study areas] in a manner so as not to impair the suitability of such areas for preservation as wilderness" "does not mandate, with the clarity necessary to support judicial action," that an agency exclude particular vehicles from those areas) (internal quotation marks and citation omitted); <u>id.</u> at 66-67 (discussing other examples).

obligated parties on any particular schedule, thus demonstrating that Congress did not intend to impose such a requirement.  See Sebelius v. Cloer, 133 S. Ct. 1886, 1894 (2013).[7]

Valero's Complaint thus improperly requests that this Court encroach on EPA's discretion by ordering EPA to conduct a rulemaking that it is not statutorily required to undertake, and to take further "appropriate actions to remedy, mitigate, and offset the harm to Plaintiff."  Compl. at Request for Relief ¶¶ C-D.  Such a request, however, asks the Court to compel EPA to make policy judgments left to the Agency's discretion, and exceeds the scope of the CAA citizen suit provision.  See Envtl. Def. Fund v. Thomas, 870 F.2d at 899 ("[T]he district court has jurisdiction, under Section 304, to compel the Administrator to perform purely ministerial acts, not to order the Administrator to make particular judgmental decisions."); Sierra Club v. Thomas, 828 F.2d at 791 ("Congress provided for district court enforcement under section 304 in order to permit citizen enforcement of clear-cut violations by polluters or defaults by the Administrator where the only required judicial role would be to make a clear-cut factual determination of whether a violation did or did not occur." (footnote and internal quotation marks omitted)).

Because there is no requirement to re-evaluate the definition of obligated parties under the Act, much less any date-certain deadline to do so, Section 211(o)(3)(B)(ii)(I) does not impose

---

[7] In addition, the compliance flexibility mechanisms built into the Act further undermine the claim that Section 211(o)(3)(B)(ii)(I) requires the annual re-evaluation of the obligated party definition.  For example, under the Act, obligated parties comply with the annual standards by acquiring credits.  42 U.S.C. § 7545(o)(5).  Obligated parties are permitted to carry forward deficits or excess of the credits used to demonstrate RFS compliance from year to year.  42 U.S.C. § 7545(o)(5)(A)-(C).  These provisions would make little sense if the identity of the obligated parties was at risk of changing from year to year.  This further demonstrates that Congress did not intend to require EPA to re-evaluate—and potentially change—the obligated party designation every year.

a nondiscretionary duty on EPA within the scope of the CAA citizen suit provision.  Count I of

the Complaint should therefore be dismissed.

### 3.  Count II of Valero's Complaint fails to identify any nondiscretionary duty that EPA must perform under CAA Section 211(o)(11).

Count II of Valero's Complaint alleges that EPA has violated its nondiscretionary duty to

conduct periodic reviews of certain factors under the RFS program under CAA Section

211(o)(11), 42 U.S.C. § 7545(o)(11).  This second count must also be dismissed because any

such duty is not subject to a date certain deadline.

CAA Section 211(o)(11) provides as follows:

(11)  **Periodic reviews**. To allow for the appropriate adjustment of [certain RFS requirements], the Administrator shall conduct periodic reviews of—

(A)   existing technologies;

(B)   the feasibility of achieving compliance with the requirements; and

(C)   the impacts of the requirements described in [specified statutory provisions] on [specified individuals and entities].

42 U.S.C. § 7545(o)(11).  This provision utterly lacks any schedule or date-certain deadline by

which the Agency must conduct these periodic reviews.  Rather, this provision leaves the timing

of the Agency's action to its discretion, indicating only that the reviews shall be conducted to

"allow for the appropriate adjustments" to the renewable fuel standards.  Id.  Again, the term

"appropriate" is broad and confers significant discretion to EPA regarding when to conduct these

reviews.  Michigan, 135 S. Ct. at 2707.  Without a clear-cut deadline by which the Agency must

take the action that Valero seeks to compel under this provision, Valero cannot allege a

nondiscretionary duty suit within the ambit of Section 304(a)(2).  See Sierra Club, 828 F.2d at

791 ("In the absence of a readily-ascertainable deadline, therefore, it will be almost impossible to

conclude that Congress accords a particular agency action such high priority as to impose upon

-20-

the agency a 'categorical[] mandat[e]' that deprives it of all discretion over the timing of its

work.") (footnote omitted).  For this reason, Count II of the Complaint should be dismissed.

> **C.     In the alternative, Count I of Valero's Complaint must be dismissed because exclusive jurisdiction over that claim lies in the courts of appeals.**

Although Valero frames Count I of its Complaint as a nondiscretionary duty claim under

the CAA citizen suit provision, that claim, in effect, challenges EPA's failure to re-evaluate the

definition of "obligated party" in the final RFS 2014-2016 annual standards rule, discussed supra

at Part I.B.  Under the CAA, however, any final EPA action may only be challenged in the courts

of appeals.  Indeed, Valero has already challenged the final RFS 2014-2016 rule in the D.C.

Circuit.  Count I of the Complaint should therefore alternatively be dismissed because the D.C.

Circuit has exclusive jurisdiction over that count.

CAA Section 307(b)(1), 42 U.S.C. § 7607(b)(1), provides the courts of appeals with

jurisdiction over challenges to EPA final actions.  See Texas v. EPA, 829 F.3d 405, 418 (5th Cir.

2016).  This jurisdiction is exclusive: once EPA takes a final action, the district court is "clearly

left . . . without jurisdiction of the claim." Seabrook, 659 F.2d at 1373; accord Dow Chem. v.

EPA, 832 F.2d 319, 324 n.32 (5th Cir. 1987).  The courts assess jurisdiction "in a pragmatic

way," Seabrook, 659 F.2d at 1373, "regardless of how the grounds for review are framed."

Virginia v. United States, 74 F.3d 517, 523 (4th Cir. 1996); accord Cal. Dump Truck Owners

Ass'n v. Nichols, 784 F.3d 500, 505-07 (9th Cir. 2015), cert. denied, 136 S. Ct. 403 (2015)

(discussing cases).

The Fifth Circuit's decision in Seabrook is directly on point.  There, EPA issued a final

rule approving certain Texas's State Implementation Plan revisions.  See 659 F.2d at 1373.  The

plaintiffs challenged the rule in the court of appeals.  Id.  Simultaneously, the plaintiffs brought a

non-discretionary duty suit under CAA Section 304(a)(2) in district court, challenging EPA's

-21-

failure to act with respect to the same rule.  Id.  The Fifth Circuit held that the district court

lacked jurisdiction because Section 307(b)(1) vested exclusive jurisdiction over challenges to

final actions in the courts of appeals.  Id.  The court emphasized that once EPA takes a final

action, a plaintiff cannot manufacture district court jurisdiction under Section 304(a)(2) by

pleading that it is "complaining not only of what the Administrator has done, but of what he has

failed to do."  Id.  In so holding, the Court found that "[t]he suggestion that the district court can

order the Administrator to do things he has failed to do . . . while the court of appeals is

reviewing what the Administrator has actually done would result in an impractical process of

piecemeal review that Congress could not have intended in §§ 304 and 307."  Id.

      Here, as in Seabrook, EPA issued a final rule setting the annual RFS standards for 2014-

2016.  Valero challenged this rule in the D.C. Circuit, arguing that EPA was obliged to re-

evaluate the point of obligation in the rule.[8]  Mot. Ex. B, App. at 22.   While that suit is still

pending, Valero filed this nondiscretionary duty suit in this Court, making the same argument in

Count I as it does in the D.C. Circuit.  See id.; Compl. ¶ 32.  Seabrook explicitly forbids just this

kind of "piecemeal review," and precludes Valero from evading the jurisdictional bar by

"complaining not only of what the Administrator has done, but of what he has failed to do." 659

---

[8] For the reasons advanced by EPA in the D.C. Circuit litigation, and as discussed above, EPA is
not required to evaluate and adjust annually its implementing regulations, including the RFS
point of obligation.  Instead, the proper avenues to challenge the 2010 regulation defining
obligated parties are through an "after-arising" judicial challenge to the 2010 rulemaking in the
D.C. Circuit, 42 U.S.C. § 7607(b)(1), or through an administrative petition for rulemaking
requesting that EPA change the point of obligation.  Valero has filed an "after-arising" petition in
the D.C. Circuit, Mot. Ex. D, App. at 60, and has also twice petitioned EPA to change the point
of obligation.  Id., App. at 67; Compl. Ex. A.  A proposed denial of those and similar
administrative requests has been issued by EPA, 81 Fed. Reg. 83,776, and the Agency is
currently considering public comments on that proposed denial before issuing a final decision.

F.2d at 1373.  The D.C. Circuit therefore has exclusive jurisdiction over Count I, and, for this

alternative reason, that Count should be dismissed for lack of jurisdiction.

> **D.**     **At a minimum, the Court should stay this case pending the outcome of the related D.C. Circuit proceedings.**

Finally, even if the Court does conclude that Valero has met its burden of demonstrating

jurisdiction, this case should be stayed pending the outcome of the related D.C. Circuit litigation.

This Court has "broad discretion to stay proceedings as an incident to its power to control its

own docket."  Clinton v. Jones, 520 U.S. 681, 706 (1997); Woodson v. Surgitek, Inc., 57 F.3d

1406, 1417 (5th Cir. 1995).  The Court may grant a stay where it would serve "economy of time

and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254

(1936).  As part of this broad discretion, a district court may stay a suit that is duplicative of

another federal court suit.  See, e.g., Greco v. Nat'l Football League, 116 F. Supp. 3d 744, 761-

62 (N.D. Tex. 2015) (staying district court proceedings pending review of related issues in

appellate case); Chruby v. Global Tel Link Corp., 119 F. Supp. 3d 395, 397-98 (E.D. Va. 2015)

(same).

"[I]n determining whether a stay is proper, courts consider the interests of the parties and

potential conservation of judicial resources."  Greco, 116 F. Supp. 3d at 761 (citing Landis, 299

U.S. at 254-55).  Here, the Court should grant a stay pending a ruling from the D.C. Circuit on

the question of whether EPA was required to re-evaluate the definition of "obligated party" in

the rule setting the 2014-2016 renewable fuel standards.  Such a stay would conserve the

resources of the Court and the parties by avoiding the litigation of this issue while it is

simultaneously being litigated in the D.C. Circuit.  See Dow Chem., 832 F.2d at 324 n.30

(expressing "distaste" for "piecemeal review" where court decides a legal question while leaving

related factual and other legal questions to be decided in litigation pending before another court);

KCCR, Inc. v. Brunner, No. H-10-cv-01263, 2010 WL 4236868, at *2-3 (S.D. Tex. Oct. 21, 2010) (citing 5th Cir. cases).  Moreover, a stay of this case would not harm Valero.  Valero is a party to the D.C. Circuit litigation, which is fully briefed and scheduled for oral argument on April 24, 2017.  Mot. Ex. C., App. at 59.  A stay of this matter pending the outcome of the D.C. Circuit litigation would likely cause minimal delays.  For all of these reasons, even if venue is proper, and even if it possesses jurisdiction over this lawsuit, the Court should stay this matter pending resolution of Valero's Count I by the D.C. Circuit.

## CONCLUSION

For the foregoing reasons, venue is improper in this Court, and the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a).  Alternatively, the Court should dismiss Valero's Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), or stay this case pending the outcome of the related D.C. Circuit litigation.


Dated:  March 27, 2017                          Respectfully submitted,

                                                JEFFREY H. WOOD
                                                Acting Assistant Attorney General
                                                Environment and Natural Resources Division

                                                s/  Lisa Bell
                                                Lisa Bell
                                                U.S. Department of Justice
                                                Environment & Natural Resources Division
                                                Environmental Defense Section
                                                P.O. Box 7611
                                                Washington, DC 20044
                                                Telephone: (202) 514-9275
                                                Facsimile: (202) 514-8865
                                                Lisa.Bell@usdoj.gov
Of Counsel:                                     Counsel for Defendants

RYLAND LI
Office of General Counsel
United States Environmental Protection Agency